ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 30, 2025
No. 25-5202

---

# In the Court of Appeals for the District of Columbia Circuit

---

LEARNING RESOURCES, INC. AND HAND2MIND, INC.,

*Plaintiffs-Appellees*,

*v.*

DONALD J. TRUMP, *et al.,*

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Columbia No. 1:25-cv-01248-RC

---

**BRIEF *AMICI CURIAE* OF EMILY LEY PAPER, INC.,
D/B/A SIMPLIFIED; KILO BRAVA LLC; BAMBOLA LLC;
KIM'S CLOTHES AND FASHION LLC; AND ROKLAND LLC
IN SUPPORT OF PLAINTIFFS-APPELLEES**

---

John J. Vecchione
    *Counsel of Record*
Andrew J. Morris
Markham S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Ste. 300
Arlington, VA 22203
(202) 869-5210
john.vecchione@ncla.legal
*Counsel for* Amici Curiae

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES
## PURSUANT TO CIRCUIT RULE 28(a)(1)

A.    ***Parties and Amici***. As of July 30, 2025, the date on which this *amicus* brief was filed, the instant a*mici* are not aware of any other parties, intervenors, or *amici* who have entered an appearance in this Court, other than those listed in the briefs of Defendants-Appellants and Plaintiffs-Appellees or disclosed by other *amici* to date.

B.    ***Ruling Under Review***. *Amici curiae* are aware of no rulings under review other than those listed in the briefs of Defendants-Appellants and Plaintiffs-Appellees or disclosed by other *amici* to date.

C.    ***Related Cases***.  *Amici curiae* are aware of no pending related cases other than those listed in the briefs of Defendants-Appellants and Plaintiffs-Appellees or disclosed by other *amici* to date.

July 30, 2025                              /s/ John J. Vecchione
                                                John J. Vecchione

                                                *Counsel for Amici Curiae*

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel states that each a*micus curiae* is a small business incorporated or formed as a limited liability company in Florida. None has a parent corporation, and no publicly held corporation holds 10% or more of its stock.

/s/ John J. Vecchione
John J. Vecchione

## STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING

All parties have consented to the filing of this brief.* Pursuant to Circuit Rule 29(d), NCLA certifies that a separate brief is necessary. As set forth in the below section "Interest of *Amici Curiae*," *amici* are plaintiffs in litigation challenging the tariffs at issue in this case. *Amici* filed their  suit  in the U.S. District Court for the Northern District of Florida but that court transferred it to the Court of International Trade ("CIT"), where *amici* are challenging  jurisdiction.  This separate brief provides the Court additional legal background supporting the conclusion that jurisdiction in this case lies in the district court rather than CIT. It also supplies additional information about the protean jurisdictional arguments the Government has advanced, and about the damage to district court jurisdiction and to injured parties like *amici* that would result from a reversal of the district court's jurisdictional decision below.

---

* *Amici* state that no counsel for a party authored this brief in whole or in part; and that no person or entity, other than New Civil Liberties Alliance and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief.  *See* Fed. R. App. P. 29(c)(5).

iii

Respectfully submitted,

/s/ John J. Vecchione
John J. Vecchione
 *Counsel of Record*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Ste. 300
Arlington, VA 22203
(202) 869-5210
john.vecchione@ncla.legal

Dated: July 30, 2025

iv

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(a)(1) ................................................. i

CORPORATE DISCLOSURE STATEMENT .............................................. ii

STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING ............................................................................................ iii

TABLE OF CONTENTS ........................................................................ v

TABLE OF AUTHORITIES ..................................................................vi

INTEREST OF *AMICI CURIAE* ............................................................ 1

STATEMENT OF THE CASE ................................................................ 3

ARGUMENT ....................................................................................... 5

    I. THIS ACTION ARISES ONLY OUT OF IEEPA ....................................... 5

    II.  IN THIS CONTEXT, THE EXECUTIVE ORDERS AND HTSUS MODIFICATIONS ARE NOT "LAWS OF THE UNITED STATES" ............. 12

    III. INTERPRETING IEEPA DOES NOT IMPLICATE CIT'S TECHNICAL EXPERTISE IN TARIFF STATUTES AND REGULATIONS ...................... 16

CONCLUSION ................................................................................... 19

CERTIFICATE OF COMPLIANCE ........................................................ 20

CERTIFICATE OF SERVICE ............................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Air Parcel Forwarding Co. v. United States*,
  515 F. Supp. 47 (Ct. Int'l Trade 1981) .................................................. 8

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023) ............................................................................ 5, 6

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ............................................................................ 8, 9

*City of New York v. FCC*,
  486 U.S. 57 (1988) .......................................................................... 13, 14

*Coal. to Pres. the Integrity of Am. Trademarks v. United States*,
  790 F.2d 903 (D.C. Cir. 1986) .............................................................. 15

*Coin Ctr. v. Yellen*,
  No. 3:22-cv-20375, 2023 WL 7121095 (N.D. Fla. Oct. 30, 2023) ......... 17

*Glaxo Wellcome Inc. v. United States*,
  126 F. 2d 581 (Ct. Int'l Trade 2000).................................................... 13

*Gully v. First Nat'l Bank*,
  299 U.S. 109 (1936) ............................................................................ 8, 9

*Int'l Lab. Rights Educ. & Rsch. Fund v. Bush*,
  752 F. Supp. 490 (D.D.C. 1990)............................................................ 17

*Int'l Lab. Rights Fund v. Bush*,
  357 F. Supp. 2d 204 (D.D.C. 2004)..................................................... 7, 9

*K Mart Corp. v. Cartier, Inc.*,
  485 U.S. 176 (1988) ............................................................ 4, 15, 16, 18

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ................................................................................ 6

*Learning Res., Inc. v. Trump*,
  No. 25-1248, 2025 WL 1525376 (D.D.C. May 29, 2025) ........ 3, 7, 10, 17

*Marmen Inc. v. United States*,
  134 F.4th 1334 (Fed. Cir. 2025) .......................................... 16

*Merrell Dow Pharms., Inc. v. Thompson*,
  478 U.S. 804 (1986) .......................................... 9, 12

*Oregon v. U.S. Dep't of Homeland Sec.*,
  772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) ....................................... 11

*Rosencrans v. United States*,
  165 U.S. 257 (1897) .......................................... 5

*Schaper Mfg. Co., Div. of Kusan, Inc. v. Regan*,
  566 F. Supp. 894 (Ct. Int'l Trade 1983) ................................... 8

*Sierra Club v. U.S. Dep't of Energy*,
  134 F.4th 568 (D.C. Cir. 2025) ............................................ 13

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013) .......................................... 18

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .......................................... 18

*United States v. Haggar Apparel Co.*,
  526 U.S. 380 (1999) .......................................... 16

*United States v. Yoshida Int'l, Inc.*,
  526 F.2d 560 (C.C.P.A. 1975) ............................................ 11

*V.O.S. Selections, Inc. v. United States*,
  772 F. Supp. 3d. 1350 (Ct. Int'l Trade 2025) ....................................... 3

*Youngstown Sheet & Tube Co v. Sawyer*,
  343 U.S. 579 (1952) .......................................... 13

**Statutes**

19 U.S.C. § 3004 ........................................................ 14

28 U.S.C. § 1331 ........................................................... 5

28 U.S.C. § 1581(i) ....................................................... 4, 6, 12

vii

## INTEREST OF *AMICI CURIAE*

*Amici curiae* are all Florida companies injured by the Executive Branch's illegal use of the International Emergency Economic Powers Act of 1977 ("IEEPA"), Pub. L. No. 95-223, tit. II, 91 Stat. 1626 (1977) (codified as amended at 50 U.S.C. § 1701 *et seq.*), to impose tariffs on them. On April 3, 2025, *amici* filed the first suit in the nation challenging these tariffs ("the Executive Order Tariffs"). *Amici* filed their suit in the Northern District of Florida, but that court transferred their case to the CIT. The New Civil Liberties Alliance ("NCLA") represents these *amici*, both here and in the above-mentioned suit, *pro bono publico*. All *amici* have an interest in this case because access to the local federal district courts when provided by Congress, as here, is particularly vital to small businesses unlikely to have contacts, resources, or inclination to defend their Constitutional rights a thousand miles from where they reside. This is particularly true in that *amici* sought injunctive relief for violation of the Constitution and laws and not a refund of improperly charged tariffs.

Specifically, *amicus* Simplified is a Florida corporation with its principal place of business in Pensacola. It sells premium planners,

organizational tools, and home-management products. A woman-owned and -led business, Simplified's mission is to inspire and empower women with the tools they need to simplify their lives. Simplified has made and makes significant purchases from sources in China.

*Amicus* Kilo Brava LLC is a Florida limited liability company with its principal place of business in Sarasota. It designs and sells luxury loungewear, sleepwear, and swimwear. Kilo Brava has made and makes significant purchases from sources in China.

*Amicus* Bambola LLC is a Florida limited liability company with its principal place of business in Sarasota. It sells luxury loungewear, sleepwear, and swimwear. Bambola has made and makes significant purchases from sources in China, as well as Bangladesh, Colombia, India, Italy, Morocco, the Philippines, and Turkey.

*Amicus* Kim's Clothes and Fashion LLC is a Florida limited liability company with its principal place of business in Jacksonville. It is a boutique store that sells affordable clothing and accessories for women. Kim's Clothes and Fashion has made and makes significant purchases from sources in China and Australia.

*Amicus* Rokland LLC is a Florida limited liability company with its principal place of business in Gainesville. It designs and distributes electronic products. Rokland has made and makes significant purchases from sources in China and Taiwan.

All *amici curiae* have paid tariffs. They—not the countries they import from—paid the tariffs, and all of them will pay higher tariffs if the Executive Order Tariffs survive challenge. All, like their counsel NCLA, have a strong interest in ensuring that the respective branches of Government adhere to the roles assigned to each branch by the Constitution and the laws of the United States.

## STATEMENT OF THE CASE

Both courts that have addressed the lawfulness of the Executive Order Tariffs have found them unlawful. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d. 1350 (Ct. Int'l Trade 2025); *Learning Res., Inc. v. Trump*, No. 25-1248, 2025 WL 1525376 (D.D.C. May 29, 2025) (appeal pending). The district court in this case also correctly held it had jurisdiction. But three other district courts have erroneously concluded that the President stripped district courts of jurisdiction by wrongfully

invoking IEEPA in his Executive Orders ("EO"). In the Government's telling, that usurpation of Congress's tariff power strips district courts of jurisdiction because it was implemented through EOs and the implementing modifications to the Harmonized Tariff Schedule of the United States ("HTSUS"). *See* Gov't Br. 31.

This theory fails for two reasons. 28 U.S.C. § 1581(i) provides CIT jurisdiction only over actions that "arise out of" certain "law[s] of the United States." But first, this action does not "arise out of" the EOs or the HTSUS modifications, but out of IEEPA. And second, the EOs and the HTSUS modifications are not "law[s] of the United States" in the context of this case.

The Supreme Court has rejected an attempt, like the one here, to establish jurisdiction in the CIT by resorting to an unnatural reading of language. *See K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 190 (1988) (rejecting a resort to legislative history and purpose to change the ordinary meaning of the word "embargo"). This Court should also reject the Government's unnatural reading of the terms "arising out of" and "Laws of the United States" to strip the district court here of jurisdiction.

This Circuit should affirm the well-reasoned opinion of the district court as its own, hold that the district court properly asserted jurisdiction, and affirm the injunction. It should refuse to delay the effect of the injunction for longer than it takes the Government to petition the Supreme Court for relief.

## ARGUMENT

## I.    THIS ACTION ARISES ONLY OUT OF IEEPA

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 ("Federal question") because Plaintiffs raise claims "arising under the Constitution" and "laws … of the United States." That jurisdiction can be displaced only if a statute eliminates it in language "equally express" to that of § 1331. *Rosencrans v. United States*, 165 U.S. 257, 262 (1897) ("[S]tatutes clearly defining the jurisdiction of the courts … must control … in the absence of subsequent legislation equally express."); *see also Axon Enter., Inc. v. Fed. Trade Comm'n* and *SEC v. Cochran*, 598 U.S. 175, 208 (2023) (Gorsuch, J., concurring) (quoting the same) (*Axon/Cochran*). This "express" requirement is particularly demanding when applied here, because "'jurisdiction conferred by 28 U.S.C. § 1331,'

in particular, 'should hold firm against mere implication[s]' from other laws." *Axon/Cochran*, 598 U.S. at 208 (Gorsuch, J., concurring) (quoting *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012)). The Government bears the burden to show that exclusive jurisdiction lies in the CIT. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

The Government contends that jurisdiction under § 1331 is displaced primarily by 28 U.S.C. § 1581(i)(1)(B), which provides the CIT "exclusive jurisdiction of any civil action … that *arises out of any law* of the United States *providing for … tariffs*, duties, fees or other taxes on the importation of merchandise." 28 U.S.C. § 1581(i)(1)(B) (emphasis added).[1] But that provision does not apply here. This action "arises out of" IEEPA and, as the district court correctly held and Plaintiffs' brief

---

[1] The Government also contends that the CIT has jurisdiction under § 1581(i)(1)(D), which provides jurisdiction over "any action … that *arises* out of any *law* of the United States … providing for … administration and enforcement with respect to the matters referred to in" any preceding provision of § 1581(i)(1). 28 U.S.C. § 1581(i)(l)(D) (emphasis added). This argument fails for two reasons. First, as explained above (in section I), this action does not "arise[] out of" the EOs or the HTSUS amendments. Second, as explained below (in section II), in this case the EOs and the HTSUS amendments are not "law[s] of the United States."

6

explains, IEEPA does not "provid[e] for … tariffs." This case does not, as the Government now contends, arise out of the EOs that rely on IEEPA. Nor does it arise out of the HTSUS modifications, which are only the mechanical instrument that implemented the IEEPA Executive Orders, and which relied on IEEPA for their status as a law.

The district court correctly reached that conclusion. Explaining that the action "'arises out of' the substantive law under which the President acted," it held that this action arises out of "IEEPA—not the HTSUS." 2025 WL 1525376, at *7 n.4. The court cited *International Labor Rights Fund v. Bush*, 357 F. Supp. 2d 204, 208 (D.D.C. 2004), which considered whether an action arose out of the Tariff Act of 1930 for purposes of § 1581(i). To identify the "substantive law giving rise to the[] claims," that court identified the statute that "would require an interpretation" to "determin[e] … the government's liability." *Id*. To that end, it emphasized that the Complaint's "'statutory and regulatory framework' section … focuse[d] solely on" one statutory provision, leading the court to "the obvious conclusion" that the plaintiff's claim arose out of that provision. *Id*.

7

The CIT uses a similar approach. To apply § 1581(i), it identified the law the action "ar[ose] out of" by identifying the action's "gravamen," which it described as the "thrust of the [plaintiff's] grievance." *Schaper Mfg. Co., Div. of Kusan, Inc. v. Regan*, 566 F. Supp. 894, 896 (Ct. Int'l Trade 1983).

Other jurisdictional statutes contain identical language, and courts construing those statutes have consistently held that a claim "arises" only out of the underlying law that is, in substance, the claim's "prime mover."[2] For example, § 1581(i) was "apparently drawn" from § 1331, *Am. Air Parcel Forwarding Co. v. United States*, 515 F. Supp. 47, 51 (Ct. Int'l Trade 1981), and a claim "aris[es] under" § 1331 only if federal law is an "essential" element of the claim. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). Similarly, the Supreme Court stated that a claim "aris[es] under" the law that "create[d]" the claim, and which the court therefore must construe to decide that claim. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (addressing 28 U.S.C.

---

[2] On "prime mover," see Aristotle, *Metaphysics* 1073a20 (Hugh Tredennick trans.).

8

§ 1338(c), which grants district courts jurisdiction over civil actions "arising under" patent statutes). As these cases show, a claim does not "arise" from every law that is one of the claim's "ingredient[s]." *See Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (explaining that § 1331's "arising under" clause has been interpreted to grant a more "limited power" than Article III's "arising under" clause).

Here, the "substantive law" giving rise to this action, *Int'l Lab. Rights Fund*, 357 F. Supp. 2d at 208, is IEEPA. The "thrust of the plaintiff[s'] grievance" and the "essential element" of their action, *Gully*, 299 U.S. at 112, is the President's unlawful invocation of that statute. Plaintiffs in this case cited only IEEPA as the gravamen of their Complaint, as did *amici* in their complaint filed in the Northern District of Florida. Those Complaints cited the EOs only to describe what occurred and the authority the President relied upon to implement the tariffs.

Accordingly, IEEPA is the only law whose interpretation is contested, and the only law that requires a decision by the Court. *Christianson*, 486 U.S. at 808. Removing any possible doubt that this case

9

arises from IEEPA, and IEEPA alone, the Complaint and the district court opinion focus entirely on IEEPA and whether it authorized tariffs, not on interpreting the Executive Orders or HTSUS. App. 12-28; *Learning Res.,* 2025 WL 1525376, at *7-*15 ("Analysis" section of the opinion discussing IEEPA in depth without referring to HTSUS except for a reference in n.4).

Despite these well-established limits on the meaning of "arises out of," the Government argues that this action arises out of the EOs and HTSUS rather than IEEPA. Gov't Br. 27. Notably, the Government does not argue that the action arises out of the EOs and HTSUS *in addition* to IEEPA. *See* Gov't Br. 28 ("Moreover, this case plainly 'arises out of,' 28 U.S.C. § 1581(i)(1), the HTSUS and the executive orders modifying it."). Yet the Government offers no argument that this well-established meaning of "arises out of" does not apply to IEEPA. Instead, it tries to eliminate IEEPA from the jurisdictional analysis by arguing that the courts' determination of jurisdiction should not overlap with the merits. Gov't Br. 31-32. As Plaintiffs explain, however, this overlap is both acceptable and common. Resp. Br. 22-23. It also is written directly into

10

§ 1581(i)(1)'s limitation on CIT jurisdiction to actions "aris[ing] out of any law … providing for … tariffs."[3]

The Government fails to dispute that this action arises from IEEPA. Indeed, it has abandoned its previous insistence that this action arises out of IEEPA, and now advances the theory it arises out of the EOs and HTSUS only as an afterthought. The Government raised the theory only after Judge Restani of the CIT proposed it during oral argument in *Oregon v. U.S. Dep't of Homeland Sec.*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). Oral Argument at 18:22-21:37, *Oregon v. DHS*, 772 F. Supp. 3d 1350 (No. 25-00077), https://www.cit.uscourts.gov/sites/cit/files/20250513_25-00066_3JP.mp3. Plaintiffs-Appellees' Brief has described some of the odd way stations in the development of this newfound HTSUS theory. Resp. Br. 25-26 & n.20.

---

[3] The Government's brief (at 33) supports this argument by citing *United States v. Yoshida Int'l, Inc.*, 526 F.2d 560 (C.C.P.A. 1975), where the CIT's predecessor court exercised jurisdiction over a challenge to tariffs the government was defending based on the Trading with the Enemy Act (TWEA). *Id.* at 570. But *Yoshida* is irrelevant to jurisdiction here (as well as to the merits). It is a pre-IEEPA case in which the parties did not litigate jurisdiction, and the court did not address the topic. *Id.*

11

In any event, this newfound theory fails. For the reasons explained in the above summary of the criteria for identifying the law from which a claim "arises," this action did not arise from the EOs nor the HTSUS. The "substantive law" giving rise to this entire dispute is IEEPA. The sole focus of this litigation has been on whether IEEPA authorizes tariffs. Beyond that single focus, the litigation has not even touched on the validity of the EOs, nor on the validity of the HTSUS modifications that have the mechanical function of implementing the tariffs. The EOs and the HTSUS are mere derivative "ingredients" of the Complaint, *Merrell Dow Pharms., Inc.*, 478 U.S. at 807, which become relevant only if a court has first decided that IEEPA authorizes tariffs.

## II.   IN THIS CONTEXT, THE EXECUTIVE ORDERS AND HTSUS MODIFICATIONS ARE NOT "LAWS OF THE UNITED STATES"

The Executive Orders and amendments to HTSUS cannot provide jurisdiction under § 1581 for the additional reason that, in this action, neither is a "law of the United States." *See* 28 U.S.C. § 1581(i) (CIT jurisdiction lies over actions that "arise out of" certain "law[s] of the United States"). The EOs do not meet this requirement because, in general, "law of the United States" refers only to "federal statutes

12

themselves and federal regulations that are properly adopted in accordance with statutory authorization." *City of New York v. FCC*, 486 U.S. 57, 63 (1988). Courts typically do not treat Executive Orders as "law[s] of the United States." *See, e.g.*, *Sierra Club v. U.S. Dep't of Energy*, 134 F.4th 568, 573 (D.C. Cir. 2025). *See also Youngstown Sheet & Tube Co v. Sawyer*, 343 U.S. 579, 587 (1952) ("[T]he President's power to see that the laws are faithfully executed refutes the idea that he is … a lawmaker.").

Even if EOs could be treated as laws of the United States (if they were based on valid statutes or laws), the EOs in this case would not qualify because they rest on the President's *ultra vires* citation of IEEPA, which does not authorize tariffs. *See Glaxo Wellcome Inc. v. United States*, 126 F. 2d 581, 591 (Ct. Int'l Trade 2000) ("[T]he proclamation has [t]he force and effect of law *when issued pursuant to statutory mandate or delegation of authority from Congress*.") (emphasis added). There being no underlying statutory mandate, the EOs do not have the force and effect of law and are not "laws of the United States."

13

The HTSUS modifications also are not the "laws of the United States," because they were not "properly adopted in accordance with statutory authorization." *City of New York*, 486 U.S. at 63. The Government's own Brief demonstrates why the illegal change in the HTSUS cannot be the legal justification for the President's tariffs and does not arise therefrom. Gov't Br. 27. As that brief acknowledges, the statute establishing the HTSUS specifies that "[e]ach modification or change made to the Harmonized Tariff Schedule by the President *under authority of law*," as well as "[t]he provisions of the Harmonized Tariff Schedule … enacted by" Congress, "shall be considered to be statutory provisions of law for all purposes. 19 U.S.C. § 3004(c)(1)." Gov't Br. 27. That gives the game away. The President can only modify the HTSUS "under authority of law." The only law the President cited was IEEPA. That law does not provide for tariff changes, so tariffs cannot "arise" under the HTSUS either.

The Government does not assert that the President, of his own Article II power, may impose tariffs. So, even it concedes the power to do so must come from somewhere. Gov't Br. 1. An EO that did not cite a

14

Congressional authorization of its tariff power would be of no force or effect. Similarly, the HTSUS does not move tariff rates all by itself. The challenged tariffs arise from nowhere else but IEEPA, as neither Article II nor HTSUS allows the President to change tariff rates set by Congress. The HTSUS is best thought of as a rate schedule, but the substance of that rate schedule must "arise" from some Congressional act or lawful delegation of tariff power.

The Supreme Court and this Court have rejected similar arguments for expanding the CIT's jurisdiction by departing from the strict language of 28 U.S.C. § 1581. *See K Mart Corp.,* 485 U.S. at 182 (affirming jurisdiction in the district court and applying the "ordinary meaning" of words in 28 U.S.C. § 1581); *Coal. to Preserve the Integrity of Am. Trademarks v. United States*, 790 F.2d 903, 907 (D.C. Cir. 1986) (affirming jurisdiction in the district court, stating "We find nothing in the purpose or legislative history of 28 U.S.C. § 1581 justifying a departure from its literal terms."). This Court should likewise hold the Government to the plain meaning of 28 U.S.C. § 1581 and affirm jurisdiction in the district court.

## III.   INTERPRETING IEEPA DOES NOT IMPLICATE CIT'S TECHNICAL EXPERTISE IN TARIFF STATUTES AND REGULATIONS

That conclusion also is consistent with 28 U.S.C. § 1581's purpose, because interpreting IEEPA lies outside of the CIT's specialized jurisdiction. *See K Mart*, 485 U.S. at 187 (explaining that applying the "ordinary meaning" of a word in § 1581(i) was consistent with the purpose of the statute). The CIT's expertise lies in "making complex determinations in a specialized area of the law," by "evaluat[ing] customs regulations and their operation." *United States v. Haggar Apparel Co.*, 526 U.S. 380, 394 (1999). *See also Marmen Inc. v. United States*, 134 F.4th 1334, 1338 (Fed. Cir. 2025) (discussing the CIT's "unique and specialized expertise in trade law").

But the issue in this case is whether IEEPA authorizes tariffs, a question that does not require "complex determinations" about "customs regulations and their operation." *Haggar Apparel Co.*, 526 U.S. at 382. IEEPA simply is not a "trade law" that warrants specialized analysis by the CIT, *Marmen Inc.*, 134 F.4th at 1338; it is an emergency statute codified in U.S. Code Title 50, "War and National Defense." As the district court correctly explained, "This case is not about tariffs *qua* tariffs. It is

16

about whether IEEPA enables the President to unilaterally impose, revoke, pause, reinstate, and adjust tariffs … ." *Learning Res.*, 2025 WL 1525376, at *1.

History confirms that applying IEEPA does not implicate the CIT's expertise. The CIT had *never* heard an IEEPA case in the almost 50 years since that statute was enacted (until this past April when certain importers chose to file a challenge to President Trump's IEEPA tariffs in that court). Thus the CIT has zero relevant precedent or special skill in interpreting IEEPA, while the relevant experience of district courts is extensive. *See, e.g.*, *Learning Res.*, 2025 WL 1525376; *Coin Ctr. v. Yellen*, No. 3:22-cv-20375, 2023 WL 7121095 (N.D. Fla. Oct. 30, 2023); *Int'l Lab. Rights Educ. & Rsch. Fund v. Bush*, 752 F. Supp. 490 (D.D.C. 1990). The fact that Congress created the CIT as an exclusive forum for certain cases tells us nothing about the meaning of § 1581(i).

In the cases the Government cites relating to HTSUS, CIT had jurisdiction under one of the subsections of § 1581 that provides jurisdiction based on a specific tariff statute other than HTSUS. Gov't Br. 31. Those cases support Plaintiffs' argument, because they show that

17

actions over which the CIT has jurisdiction "arise under" the tariff statute that provides Executive Branch authority, not under the HTSUS.

The Government fundamentally misunderstands the CIT's post-*K Mart* jurisdiction. As the *K Mart* court admonished, "Congress did not commit to the Court of International Trade's exclusive jurisdiction *every* suit against the Government challenging customs-related laws and regulations." *Id.* at 188. Here, the letter and purpose of § 1581(i) establish that Congress did not commit this case to the CIT's jurisdiction.

Finally, the Government's Brief ends its jurisdiction argument with a plea that this Court dismiss this case or transfer it to CIT to decide its own jurisdiction. Gov't Br. 29-30. But it is well-established that every court must decide its own jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), and every court is obligated to hear every case within its jurisdiction, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). This Court should discharge that obligation by affirming the district court's holding that jurisdiction lay in that court, not in the CIT.

18

## CONCLUSION

For all the foregoing reasons, this Court should affirm the district court's ruling, and it should not stay the injunction any longer than it takes the Government to petition the Supreme Court regarding that stay.

Respectfully submitted,

/s/ John J. Vecchione
John J. Vecchione
    *Counsel of Record*
Andrew J. Morris
Markham S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Dr., Ste. 300
Arlington, VA 22203
(202) 869-5210
john.vecchione@ncla.legal
*Counsel for* Amicus Curiae

Dated: July 30, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 3,796 words. This brief also complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ John J. Vecchione
John J. Vecchione

20

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ John J. Vecchione
John J. Vecchione